■ In the Matter of VICTOR M., a Person Alleged to be a Juvenile Delinquent, Appellant. [825 NYS2d 468]—

Order of disposition, Family Court, Bronx County (Alma Cordova, J.), entered on or about October 18, 2005, which adjudicated appellant a juvenile delinquent upon his admission that he had committed acts which, if committed by an adult, would constitute the crime of criminal possession of a controlled substance in the fifth degree, and placed him in the custody of the New York State Office of Children and Family Services for a period of up to 18 months, affirmed, without costs.

On June 4, 2005 at approximately 11:55 P.M., uniformed police officers Recio and his partner were conducting "vertical" patrols in various buildings in the vicinity of 179th to 181st streets in the Bronx. "Vertical" patrols are conducted by officers walking through each floor in buildings designated as "clean hall buildings" to prevent illegal activity. Trespassers in these buildings are subject to prosecution.

Recio testified at the suppression hearing that while patrolling some interconnected buildings, he and his partner observed appellant and three others playing a dice game in a hallway. Recio observed the dice and U.S. currency being used in the game. Although he could not specifically recall in which building he made this observation, Recio testified that he and appellant subsequently exited the building located at 2123 Boston Road.

Recio intended to issue appellant a summons and asked for identification.[1] Appellant stated that he lived in the building but did not

_____

1. Although the record does not specifically state the offense for which Officer Recio intended to issue the summons, he testified at the suppression

have any identification. He offered to go to his apartment to get some but Recio refused. A woman who claimed to be appellant's mother appeared at the scene but she also had no identification. Recio decided to take appellant to the precinct to verify his age and pedigree information for issuance of the summons. Appellant was transported to the precinct in a police vehicle.

Recio testified that once at the precinct, he followed standard procedure by searching appellant in the presence of the desk sergeant. Drugs were found in appellant's front right pants pocket and he was arrested.

After the conclusion of the suppression hearing, the court denied the motion to suppress, finding that Recio's observation of appellant gambling in the hallway provided him with probable cause for an arrest. The subsequent search was thus incident to a lawful arrest.

We agree. Based upon his observations of appellant participating in apparent gambling activity in the hallway[2] of a "clean halls building," Officer Recio had a reasonable basis to believe that appellant had committed an offense in his presence. While not specifically articulated on the record, the observations testified to by Officer Recio fall within the definitions of trespass (Penal Law § 140.05) and loitering (Penal Law § 240.35 [2]).[3] When appellant failed to produce identification, Officer Recio acted properly and reasonably in transporting appellant to the precinct for verification of his identity (*People v Hernandez*, 27 AD3d 292 [2006], *lv denied* 6 NY3d 848 [2006]). The fact that the search of appellant occurred "minutes before the formal arrest is immaterial and did not vitiate the search" (*People v Valenzuela*, 226 AD2d 154, 155 [1996], *lv denied* 88 NY2d 1072

hearing that there was "a lot of trespassing going on in most of the buildings." On cross-examination on this point, the following exchange occurred:

"Q. Now, it's your testimony that you do the verticals because you find a lot of trespassers?

"A. We are asked to do verticals of the building because they are clean hall buildings. When someone does not live in the building and they have no indication to visit anyone its allowed to be prosecuted."

2. It is noted that both appellant and the respondent presentment agency referred to the area in question as a "hallway."

3. The fact that appellant was not actually charged with a violation was no doubt overshadowed by the drugs later found. The propriety of the officer's actions must be seen in the context of whether there was sufficient basis for the issuance of a summons. Contrary to the dissent's argument, the facts supported, at this vital stage, a number of possible offenses. Which particular offense was contemplated was not articulated and, for the purposes of this appeal, is not essential.

[1996]). Under these circumstances, Officer Recio's actions were reasonable. Moreover, we find no basis on this record to disturb the Family Court's credibility determinations. Concur—Mazzarelli, J.P., Gonzalez and Sweeny, JJ.

Andrias and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: I respectfully dissent. The arresting officer testified at the suppression hearing that as he was performing a vertical patrol in one of three interconnected buildings on Boston Road in the Bronx, he came upon appellant and three others engaged in gambling with dice. Appellant told the officer he lived in the building but he did not have identification. At some point, appellant's mother appeared. However, she also did not have identification. Appellant offered to get identification from his apartment but for some unspecified reason, according to the officer, "we couldn't go up to his house." Because appellant had no identification, the officer could not issue a summons to him for the gambling. Accordingly, appellant was taken to the precinct where a search of his person resulted in the seizure of a quantity of heroin and cocaine.

Here, the officer's testimony established nothing more than that appellant was engaged in gambling activity as a player, which is not a crime (*see People v King*, 102 AD2d 710 [1984], *affd* 65 NY2d 702 [1985]). In *King*, "[t]here was no testimony at the hearing that the defendant was 'advancing' or 'profiting' from gambling activity" and thus the officer "could not have reasonably suspected that the defendant was promoting gambling in the second degree (Penal Law, § 225.05)" (102 AD2d at 710). Moreover, "the officer did not testify that he saw the defendant in possession of the dice" and thus "could not have reasonably suspected that the defendant was in possession of a gambling device (Penal Law, § 225.00, subd 7; § 225.30)" (*id.*).

In *King*, the officer nonetheless had reasonable cause to believe that the defendant had violated the law. Specifically, because the dice game was being played on a sidewalk (*id.* at 711 [Carro, J., dissenting]), the officer had reasonable cause to believe that the defendant "committed a violation by loitering or remaining in a public place for the purpose of gambling with dice (Penal Law, § 240.35, subd 2)" (*id.* at 710). Here, however, there was no evidence that the gambling activity the officer observed occurred "in a public place" (Penal Law § 240.35 [2]). In fact, the officer was unable to state anything about where in the building appellant and the others were when they were engaged in gambling activity. Indeed, he was unable to state which of the three buildings he was in when he saw the dice and currency. It may be that portions of the building, whichever

one it was, are "public place[s]" (Penal Law § 240.00 [1]), but "[a] license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public" (Penal Law § 140.00 [5]). I note, moreover, that the officer testified that there was a "lot of trespassing going on in most of the buildings." That testimony hardly is consistent with an inference that the buildings generally are open to the public.

The crux of the majority's position is its assertion that "[b]ased upon his observations of appellant participating in apparent gambling activity in the hallway of a 'clean halls building,' Officer Recio had a reasonable basis to believe that appellant had committed an offense in his presence." Specifically, the majority contends that the officer had a reasonable basis to believe that appellant had committed "trespass (Penal Law § 140.05) and loitering (Penal Law § 240.35 [2])."

The majority's reliance on the offense of trespass is not defensible. The presentment agency did not introduce a shred of evidence at the hearing that would support the conclusion that appellant entered or remained unlawfully in the building, let alone that he "knowingly" entered or remained unlawfully (Penal Law § 140.05). It neither adduced any evidence that no part of the building was open to the public, nor adduced any evidence that the part of the building in which appellant was present was not open to the public (see Penal Law § 140.00 [5]). Indeed, as noted, it did not offer any evidence bearing on where (e.g., hallway, lobby or stairwell) appellant was in the building (cf. Matter of James C., 23 AD3d 262 [2005] [finding evidence legally insufficient that appellant committed the crime of third-degree criminal trespass by remaining in lobby of public housing project]).* To the extent evidence was elicited bearing on the issue of whether appellant "knowingly" and "unlawfully" entered or remained in the building, it was elicited on cross-examination of Officer Recio. Thus, counsel elicited both that appellant told the officer he lived in the building and offered to get identification from his apartment, and that appellant's mother appeared and "verified" he was her son. To be sure, the officer was not

---

* In an apparent reference to the parties' briefs, the majority "note[s] that both appellant and the respondent presentment agency referred to the area in question as a 'hallway.' " In fact, however, only the presentment agency's brief refers to the gambling activity occurring in a "hallway." In any event, evidentiary gaps cannot be filled by the briefs; no evidence was adduced at the hearing that sheds any light on where in the building the gambling activity was taking place.

required to accept appellant's claim that he lived in the building (*cf. Matter of Ryan R.*, 254 AD2d 49, 50 [1998]). But this testimony hardly supports the proposition that the officer had reasonable cause to believe appellant had committed the offense of trespass (*see People v Sanders*, 172 AD2d 239, 240 [1991], *lv denied* 78 NY2d 926 [1991] ["Even assuming that the remark by defendant's companion that the men were just passing through could fairly be attributed to defendant, this comment, on its own, completely failed to provide any basis for an inference that the men were not residents or otherwise lawfully entitled to be in the building"]).

The majority's reliance on the offense of loitering is also not defensible, and is inconsistent with its contention that the officer had reasonable cause to believe that appellant committed the offense of trespass. An essential element of the loitering offense is proof of loitering or remaining *"in a public place* for the purpose of gambling with cards, dice or other gambling paraphernalia" (Penal Law § 240.35 [2] [emphasis added]). Again, the simple and incontrovertible fact of this case is that the presentment agency adduced no evidence bearing on the issue of where in the building the gambling activity occurred. That is to say, there is no evidence that it occurred in a "public place." Contrary to the majority's position, it cannot be that the officer had reasonable cause to believe that appellant had committed both trespass and loitering. Although the former offense requires proof that appellant was not in an area open to the public, the latter requires proof that appellant was in an area open to the public.

Finally, although it is not at all clear that the majority concludes otherwise, the status of the building as a "clean halls building" is irrelevant to the issue of whether the officer had reasonable cause to believe an offense had been committed in his presence. Because the presentment agency failed to meet its burden of going forward to show the legality of the police conduct in the first instance (*People v Berrios*, 28 NY2d 361, 367 [1971]), I would grant the motion to suppress, reverse the fact-finding order, vacate the dispositional order and dismiss the petition.